# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 362 | **DATE** | 10/19/2000 |
| **CASE TITLE** | Wright vs. Life Start Centers, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, defendant Athletic Club's motion to dismiss (12-1) is denied, and the employer defendant's motion to dismiss (13-1) is likewise denied.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | OCT 2 0 2000 date docketed | 20 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | IS docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | FD-T FILED FOR DOCKETING 00 OCT 19 PM 5:06 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHELLE WRIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) Case No. 00 C 362 | |
| v. ) | |
| ) | |
| LIFE START CENTERS, INC.; ) | |
| ATHLETIC CLUBS OF AMERICA, INC., ) | |
| doing business as LIFESTART WELLNESS ) | |
| NETWORK; LIFESTART WELLNESS ) | |
| McCLURG, INC.; LIFESTART AT 200, INC.; ) | |
| and MARIO CURATOLO, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

This is an action for damages resulting from alleged sexual harassment, employment discrimination, and retaliatory action commenced by Michelle Wright against Life Start Centers, Inc.; Athletic Clubs of America, Inc., doing business as Lifestart Wellness Network; Lifestart Wellness McClurg, Inc.; Lifestart at 200, Inc.;[1] and Mario Curatolo. Athletic Clubs has moved to dismiss all of plaintiff's claims, and the employer defendants have collectively moved to dismiss counts 3, 9 and 10 of plaintiff's amended complaint. For the reasons stated below, the Court denies both motions.

---

[1] Life Start Centers, Inc., Athletic Clubs of America, Inc., Lifestart Wellness McClurg, Inc., and Lifestart at 200, Inc. will be referred to as the employer defendants.

1

**Background**

We take our recitation of the facts from the allegations in Wright's amended complaint.

Wright was hired by "one or more of the employer defendants," Am. Cplt. ¶11, in April 1998 to work at their River Park facility, which was operated by Lifestart at 200, Inc. and Lifestart Wellness Network. Between March 1999 and May 1999, Wright worked at the employer defendants' McClurg Court facility, which was operated by Lifestart Wellness McClurg, Inc. and Lifestart Wellness Network. During that time, Curatolo, a manager at the McClurg Court facility, subjected her to repeated racially derogatory remarks and harassing sexual conduct. In May 1999, Wright reported these incidents to Darren Hodgdon, president of Athletic Clubs of America, Inc., as directed by the employer defendants' employee handbook, which Wright had received during the course of her employment. In response, Hodgdon instructed Wright "to shake hands and make up" with Curatolo. Wright was then transferred back to the River Park facility and was assigned to a less favorable work shift and less favorable conditions of employment. She was denied accumulated sick and vacation time, and managers at the River Park facility unfairly scrutinized her work. From April through July 1999, Wright received harassing phone calls at home from Curatolo and other employees of the employer defendants. On July 26, Wright filed a charge of discrimination with the Equal Employment Opportunity Commission against Life Start Centers, Inc., alleging gender discrimination and retaliation. After this, Wright was subjected to continued harassment, and she became the object of retaliatory actions and discriminatory treatment by the employer defendants and coworkers.

On October 8, 1999, a managerial employee of the employer defendants fired Wright after she requested and was denied emergency leave because she could not provide medical

documentation along with her request. According to Wright, no other employees had been requested to provide such documentation for emergency leave. The managerial employee announced the termination during a meeting with Wright at the River Park facility. The employee accused Wright of dishonesty; Wright contends this accusation was falsely made. Wright applied for unemployment compensation benefits from the Illinois Department of Employment Security on October 14. On October 15, she received a statement of benefit rights from the Department based on its determination of eligibility. She received, on the same day, an unstamped letter from employer defendants dated October 12, 1999 that had been stuffed under her front door. It stated that Wright had three unexcused absences—an allegation contested by Wright—which were grounds for termination. Further, the letter stated that employer defendants would consider Wright to have resigned if she did not contact them before 5:00 p.m. on October 14. On October 18, Wright filed a second charge of discrimination with EEOC, this one against Lifestart Wellness Network, alleging retaliation.

On November 8, IDES denied Wright's claim for unemployment compensation benefits based on the employer defendants' representations that her employment had been terminated for cause. On November 12, Wright filed a third charge of discrimination with the EEOC, naming Lifestart Wellness Network and again alleging retaliation. After a later hearing at IDES, Wright's benefits were reinstated.

On January 19, 2000, Wright filed her initial complaint in this Court against Life Start Centers, Inc. (doing business as Lifestart Wellness Network) and Curatolo. On January 21, Wright filed an additional charge of discrimination with the EEOC, supplementing her previous charges by naming Lifestart Wellness McClurg, Inc. and Lifestart at 200, Inc. as additional

respondents. On June 15, Wright filed an amended complaint in the present case, naming as defendants all of the employer defendants and Curatolo.

**Analysis**

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is not to judge the merits of a plaintiff's claims, but instead to test the sufficiency of plaintiff's allegations. *Harris v. Illinois Vehicle Premium Finance Co.*, No. 99 C 5411, 2000 WL 1029232, *2 (N.D. Ill. Sept. 7, 2000); *Pelfresne v. Stephens*, 35 F. Supp. 2d 1064, 1070 (N.D. Ill. 1999). In evaluating a motion to dismiss, the Court accepts all allegations in the complaint as true and views them in the light most favorable to the plaintiff, drawing all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Autry v. Northwest Premium Services*, 144 F.3d 1037, 1039 (7th Cir. 1998). The Court may grant a motion to dismiss only if it is clear beyond doubt that plaintiff can prove no set of facts consistent with the allegations that would support her claims. *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *Albiero v. City of Kankakee*, 122 F. 3d 417, 419 (7th Cir. 1997).

**A.     Athletic Clubs' motion to dismiss**

Athletic Clubs argues that it is an improper defendant because it never employed Wright. It supports this by submitting an affidavit from Darren Hodgdon, Athletic Clubs' president. Hodgdon's affidavit, of course, is outside the four corners of the complaint, and it presents facts at odds with those alleged in the complaint. Though the Court recognizes, as Athletic Clubs argues, that Rule 12(b)(6) permits a court to consider such documents and convert the defendant's motion to one for summary judgment under Rule 56, the Court declines to consider Hodgdon's affidavit at this time. Plaintiff has asserted common law claims for negligent hiring

4

and intentional infliction of emotional distress (Counts 7 & 8) which may potentially lie against defendants other than her employer. Under the circumstances, the Court does not believe it would materially advance the litigation to turn everyone's focus at this point to whether Athletic Clubs was plaintiff's employer. For these reasons, and because plaintiff's complaint adequately alleges a basis for Athletic Clubs' liability, the Court excludes Hodgdon's affidavit and denies Athletic Clubs' motion to dismiss.

**B.     Employer defendants' motion to dismiss**

The employer defendants have collectively moved to dismiss counts 3, 9, and 10 of plaintiff's amended complaint.

Count 3 is a claim for retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-3(a). To succeed on such a claim, Wright must prove that "(1) she engaged in statutorily protected expression; (2) her employer took adverse action against her; and (3) the protected expression and the adverse action are causally linked." *Johnson v. West*, 218 F.3d 725, 732 (7th Cir. 2000); *Sanchez v. Henderson*, 188 F.3d 740, 745-46 (7th Cir. 1999). If her employer then articulates a legitimate, nondiscriminatory reason for the action, the plaintiff must show that the reason is merely pretext for discrimination. *Johnson*, 218 F.3d at 732.

Wright claims that in retaliation for her filing of EEOC charges against the employer defendants and an internal complaint against Curatolo, the employer defendants falsely reported to the Illinois Department of Employment Security that she had been discharged with cause, which resulted in an initial denial of unemployment compensation benefits. The employer defendants argue that in making this report, they were acting in furtherance of their legal right to oppose a claim for unemployment compensation.

The law certainly permits an employer to oppose a former employee's claim for unemployment compensation; it is difficult to imagine circumstances in which a legitimate challenge could give rise to a claim for retaliation under Title VII. But here Wright claims that defendants made false statements to IDES which resulted, at least for some period, in the denial of benefits and required her to engage in further legal proceedings to secure her right to those benefits. *See* Am. Cplt. ¶¶36-37, 40-41. Defendants cite no authority for refusing to allow a Title VII retaliation claim in these circumstances, and we are aware of none. The issue of the legitimacy of defendants' actions cannot be determined against plaintiff based on the allegations of her complaint. We therefore deny defendants' motion to dismiss Count 3.

Counts 9 and 10 are state law claims for breach of contract based on representations made in the employer defendants' employee handbook. The sufficiency of these claims is dependent on the existence of a contract. Illinois courts have recognized that an employee handbook may form a contract between employer and employee, but only if the traditional requirements for contract formation are present. *Duldulao v. St. Mary of Nazareth Hospital*, 115 Ill. 2d 482, 490, 505 N.E.2d 314, 318 (1987); *Hicks v. Methodist Medical Center*, 229 Ill. App. 3d 610, 614, 593 N.E.2d 119, 121 (1992). As the Illinois Supreme Court stated in *Duldulao*:

> First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement.

*Duldulao*, 115 Ill. 2d at 490, 505 N.E.2d at 318.

Even if promises are made in an employee handbook, formation of a contract may be negated by the existence of a disclaimer of any intention to make a contract. *See id.* at 491, 505

N.E.2d at 319; *Wheeler v. Phoenix Co.*, 276 Ill. App. 3d 156, 160-61, 658 N.E.2d 532, 535 (1995). Not all disclaimers, however, have this effect. *See Wheeler*, 276 Ill. App. 3d. at 161, 658 N.E.2d at 535-36 (holding that disclaimer did not negate promises made in employee manual because the disclaimer contained "no [] express, explicit, and unequivocal disclaimer of contractual obligation by defendant"); *Hicks*, 229 Ill. App. 3d at 614, 593 N.E.2d at 121-22 (disclaimer did not negate promises made in employee handbook because the disclaimer was not conspicuous); *Perman v. Arcventures, Inc.*, 196 Ill. App. 3d 758, 765, 554 N.E.2d 982, 987 (1990) (unequivocal language used in employee handbook created a contract despite existence of disclaimer).

Defendants contend that Wright signed a disclaimer that was part of an employee acknowledgment form located at the front of the employee handbook that Wright signed and dated. The disclaimer portion of the acknowledgment form states:

> I understand I may end my employment at any time, and the Company has the same right with any employee. I understand my employment is "at will," as is [sic] not the practice of the Company to enter into employment contracts, express or implied. I understand the LIFESTART WELLNESS NETWORK Employee Handbook does not form the basis for a contract. I understand that revised information may supersede, modify, or eliminate existing policies.

Wright argues that because the acknowledgment form is not part of her amended complaint, it is not appropriate for this Court to consider the acknowledgment form. To the contrary, it is well established that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Plaintiff refers to the employee handbook in her complaint, and there is no question that the handbook and any disclaimers it contains are central to her claim.

7

What is less clear is whether plaintiff's acknowledgment and signature of the disclaimer undermines her breach of contract claim. Plaintiff was hired by the employer defendants in April 1998. It is not clear when plaintiff received the handbook; in her complaint she alleges only that it was "[d]uring the course of [her] employment." Am. Cplt. ¶63. The provisions of the handbook upon which she relies, however, bear a date of August 1, 1998, suggesting that plaintiff may have received the book sometime in 1998. The disclaimer form, by contrast, does not appear to have been signed by plaintiff until late June 1999 – after she had first complained about Curatolo and perhaps even after the alleged retaliation had begun. Under the circumstances, we would be jumping the gun to conclude at this point that the disclaimer necessarily undermines plaintiff's breach of contract claim. The matter is more appropriately addressed after the facts have been revealed through discovery.

## Conclusion

For the reasons above stated, defendant Athletic Clubs's motion to dismiss [Docket Item 12-1] is denied, and the employer defendant's motion to dismiss [Item 13-1] is likewise denied.

MATTHEW F. KENNELLY
United States District Judge

Date: October 19, 2000